# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STEVEN MCCLURG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2021-0896-SG |
| | ) | |
| PRAESIDIUM PARTNERS, INC., | ) | |
| PHILIP LIU, JEREMY RAYNE | ) | |
| STEINBERG, and JEFF DORMAN, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION

Date Submitted: July 29, 2022
Date Decided: October 28, 2022

Bruce E. Jameson and Eric J. Juray, of PRICKETT, JONES & ELLIOTT, P.A., Wilmington, Delaware; OF COUNSEL: Thomas H. Vidal and Jessica Stone, of PRYOR CASHMAN LLP, Los Angeles, California, *Attorneys for Plaintiff Steven McClurg*.

Philip Trainer, Jr. and Randall J. Teti, of ASHBY & GEDDES, Wilmington, Delaware; OF COUNSEL: Esra Acikalin Hudson and Lauren Chee, of MANATT, PHELPS & PHILLIPS, LLP, Los Angeles, California, *Attorneys for Defendants Praesidium Partners, Inc., Philip Liu, Jeremy Rayne Steinberg, and Jeff Dorman*.

**GLASSCOCK, Vice Chancellor**

In 2017, two tech entrepreneurs—Plaintiff Steven McClurg and Defendant Jeremy Steinberg—began discussing the formation of a company to provide cryptocurrency investment and related services. McClurg, for his part, expended effort into the creation of cryptocurrency indices for use in the business. Steinberg assisted in this effort. On February 26, they formed Defendant Praesidium Partners, Inc. ("Praesidium"), eventually doing business as its wholly owned subsidiary Arca Investments GP, LLC ("Arca").

Meanwhile, non-party John Sarson had formed his own cryptocurrency fund, Blockchain Momentum, LP ("Momentum") and its General Partner, BC Momentum Management, LLC ("BC Partner"). In February, Steinberg and McClurg decided to make an equity investment in BC Partner, of $25,000 each, or $50,000 aggregate. Steinberg paid in $25,000, but McClurg was only able to put in $15,000. Eventually, McClurg, Steinberg and Sarson agreed that the equity investment would be for $40,000 aggregate, the amount Steinberg and McClurg had already paid in. McClurg agreed to pay Steinberg $5,000 to even their investment, although he has not done so. Sarson agreed that McClurg and Steinberg collectively owned 8% of the membership interest in BC Partner. This equity purchase, although complete, was not memorialized with paperwork evincing the transfer of the membership units.

In the spring of 2018, McClurg and Steinberg invited an attorney with an interest in cryptocurrency, Defendant Phillip Liu, to join Praesidium. The parties

1

caused Praesidium to issue 220,000 shares to each of these investors. Liu agreed to contribute $25,000 cash. In lieu of a cash contribution, McClurg and Steinberg agreed to contribute their equity interest in BC Partner and the cryptocurrency indices they had created. The agreement was memorialized in a contribution agreement (the "Contribution Agreement"). That document provided that each of the three was required to invest a further nominal amount, $22, and that each would receive 220,000 shares of Praesidium stock.[1] The parties also executed a stock purchase agreement, under the terms of which 120,000 of the shares issued to each investor were subject to a vesting schedule and continued employment with Praesidium.[2]

By the fall of 2018—a few months after the stock issuance—the parties' relationship had soured. Thereafter, Steinberg and Liu fired McClurg from his employment at Praesidium. The company offered to buy out McClurg's vested and unvested shares. According to the Defendants, Steinberg and Liu began to investigate whether McClurg had complied with the Contribution Agreement. Concluding that he had not, they dropped the attempt to have Praesidium repurchase

---

[1] Another Defendant, Jeffrey Dorman, received 120,000 shares pursuant to the Contribution Agreement.
[2] This was set up as a call right that required Praesidium to exchange a nominal amount to recall the shares.

McClurg's interest, and instead caused Praesidium to "cancel" McClurg's 100,000 "vested" shares.

McClurg brought this action, making two primary allegations. First, that the Defendants breached the Contribution Agreement by cancelling his shares. Second, that Liu and Steinberg (the "Director Defendants") breached fiduciary duties to McClurg by cancelling his stock. The matter was tried in 2022; this is my post-trial decision.

The Defendants' defense relies on the allegation that McClurg and Steinberg failed to comply with the Contribution Agreement, because 1) the stock indices were worthless, and, in any event, never validly transferred to Praesidium, and 2) the equity in BC Partner was not as valuable as McClurg had represented to Liu, and, in any event, was not adequately documented or transferred to Praesidium.

Based upon the facts developed at trial, I find the actions of the investors in both BC Partner and Praesidium to have been remarkably casual and sloppy. I also find, however, that McClurg placed the indices he and Steinberg had created on Praesidium's server and has relinquished all rights in the indices to Praesidium. Per the Contribution Agreement, that is all McClurg was required to do. Similarly, McClurg directed that Sarson transfer McClurg's and Steinberg's 8% "equity and related interests" in BC Partner to Arca, and stood ready "at and following the Closing, to deliver, or cause to be delivered" documents necessary to fulfil this term.

3

Sarson and BC Partner have consistently recognized that Arca holds an 8% equity interest in BC Partner.

The consideration provided by McClurg, I find, complied with the Contribution Agreement, and was not illusory. I find that McClurg's shares were validly issued and invalidly cancelled. The remedy sought, imposition of a constructive trust over the shares,[3] is accordingly justified. My reasoning follows.

## I. BACKGROUND[4]

This action begins with an agreement between the parties. The Plaintiff along with the individual defendants entered a contract to receive the shares of a nascent company. In exchange, they each provided bargained for consideration; specifically, money, experience, time, work product, or some combination of these. Neither the corporation nor its new stockholders took issue with the arrangement until after the stockholders had a falling out. A power struggle ensued; Plaintiff lost. The result was termination of his employment, removal from his position as a director, and the purported cancellation of his shares. Although the Defendants had the power to

---

[3] Alternatively, McClurg seeks the value of the shares as damages.
[4] Where the facts are drawn from exhibits jointly submitted at trial, they are referred to according to the numbers provided on the parties' joint exhibit list and cited as "JTX- __". Citations in the form of "PTO ___" refer to paragraphs in Granted (Stipulated [Proposed] Joint-Pre-Trial Order), DKT No. 23. Citations in the form of "Trial [I or II] ___:___" refer to Trial Tr. – Vol. I Held Via Zoom, DKT No. 27 and Trial Tr. – Vol. II Held Via Zoom, DKT No. 28.

perform the first two actions, they lacked the power to cancel McClurg's shares, which, I find, were issued for valid consideration.

The facts presented in this post-trial memorandum opinion are either stipulated to in the parties' pre-trial stipulation or were proven by a preponderance of the evidence at trial.

### A. *The Parties and the Allegations*

The Plaintiff in this action, McClurg, is a former employee, director, and stockholder of Defendant Praesidium.[5]  Praesidium is a Delaware-incorporated, California-based financial technology company focused on cryptocurrencies.[6] McClurg alleges that after entering a contract with Praesidium to exchange certain assets for Praesidium shares (the "Contribution Agreement") and providing those assets to the corporation, Defendants Steinberg and Liu—in their capacity as directors—wrongfully cancelled those shares.[7]  McClurg alleges that by cancelling his shares, Steinberg and Liu violated contractual and fiduciary duties owed to him.[8]

McClurg was not alone in entering the Contribution Agreement. Steinberg, Liu, and Defendant Jeff Dorman, another Praesidium employee, each participated

---

[5] PTO ¶¶ 15, 20.
[6] PTO ¶¶ 16, 36.
[7] Verified Compl. 8, DKT No. 1.
[8] *Id.* at 8–9.

and received shares in exchange for consideration.[9]  McClurg alleges that Steinberg, Liu, Dorman, and Praesidium, as contractual parties, breached the Contribution Agreement in connection with the cancellation of McClurg's shares.[10]

Steinberg and Liu allege that McClurg failed to provide the requisite assets and that they validly cancelled McClurg's shares for lack of consideration.[11]  In "cancelling" those shares, Steinberg and Liu state that they breached no fiduciary duties and, rather, a failure to cancel the shares would have been a breach of their fiduciary duty to Praesidium.[12]  Dorman along with Steinberg and Liu aver that they were co-parties—not counterparties—with McClurg; that Praesidium was the sole counterparty; and, therefore, that they cannot be personally liable for the Corporation's supposed breach of contract.[13]  Dorman also avers that he was neither a director nor officer and was not involved in the cancellation of McClurg's shares.[14] The Defendants argue that McClurg's action should fail on account of supposed fraudulent misrepresentations he made to Liu.[15]

---

[9] PTO ¶ 20.
[10] Verified Compl. 8.
[11] Defs.' Post-Trial Br. 40–41, DKT No. 31.
[12] *Id.* at 39–41.
[13] *Id.* at 58–60.
[14] *Id.* at 59–60.
[15] *Id.* at 55–58.

## B. Procedural History

Unlike the typical case that this Court oversees from initial complaint to full trial, this action arrived at chambers fully formed and ready for trial. McClurg initially brought an analog of this action on June 8, 2020 in Los Angeles County Superior Court alleging: "(1) breach of contract against all Defendants, (2) breach of fiduciary duty against Defendants Liu and Steinberg, (3) unfair competition in violation [sic] California Business & Professions Code Section 17200 against all Defendants, and (4) declaratory relief against all Defendants."[16] Defendants filed their answer August 12, 2020.[17] Following motion practice and rather extensive trial preparation,[18] the Defendants filed an Ex Parte Application to Dismiss or Stay Action Pursuant to California Code of Civil Procedure Section 410.30.[19] On September 15, 2021, the California court granted an order to stay the case, pending litigation of the breach of contract and breach of fiduciary duty claims in Delaware.[20]

McClurg filed his complaint and a Motion to Set Trial Date in this court on October 15, 2021.[21] The Defendants filed their answer on November 12, 2021.[22] I

---

[16] PTO ¶ 3.
[17] PTO ¶ 4.
[18] PTO ¶¶ 6 *et seq.*
[19] PTO ¶ 10.
[20] PTO ¶ 12.
[21] PTO ¶ 13.
[22] PTO ¶ 14.

held a two-day trial in February 2022.[23]  Post-trial briefing followed and concluded

May 18, 2022.[24]  The matter was fully submitted July 29, 2022.[25]

### C. A Match Made on the Blockchain

Steinberg and McClurg's friendship began in December 2017 when

Steinberg's brother-in-law introduced him to McClurg.[26]  Steinberg and McClurg

shared an interest in cryptocurrencies, and the pair immediately began to brainstorm

ideas for a new financial technology company focusing on cryptocurrency.[27]  That

same day, McClurg digitally introduced Steinberg to his friend and former

colleague, Sarson, who was the Chief Investment Officer and a Manager of BC

Partner, which is the general partner of Momentum, a cryptocurrency hedge fund.[28]

McClurg emailed Steinberg, Sarson, and two others the first draft of the "Crypto

Equal Weight Index," a cryptocurrency index, requesting "comments and

---

[23] Trial Tr. – Vol. I Held Via Zoom, DKT No. 27, Trial Tr. – Vol. II Held Via Zoom, DKT No. 28.
[24] Pl. Steven McClurg's Post-Tr. Reply Br., DKT No. 33.
[25] Letter to the Hon. Sam Glasscock III from Eric J. Juray, Esq. Resp. Ct.'s July 28, 2022 Letter to Counsel, DKT No. 35.
[26] PTO ¶ 24.
[27] PTO ¶ 25.
[28] PTO ¶¶ 26–27.

insights."[29] Steinberg, having created several indices,[30] eventually provided comments and sent McClurg a copy of a white paper on index methodology.[31]

### D. Investment in BC Partner

Over the course of the next several months, December 2017 to February 2018, Steinberg and McClurg worked together as consultants for various cryptocurrency companies.[32] During that time, the pair discussed several potential investments in the cryptocurrency space but settled on investment in Sarson's fund, BC Partner.[33] On February 22, 2018, Sarson sent McClurg and Steinberg transaction documents to provide the pair membership units in BC Partner (collectively, the "February 2018 Subscription Agreement").[34] Among these were documents titled subscription agreement, operating agreement, and 2018 profits interest plan for BC Partner.[35] In late February 2018, McClurg and Steinberg agreed to invest $25,000 each in BC

---

[29] JTX-3.
[30] *See* Trial II 440:22–41:9.
[31] Trial I 18:20–19:15.
[32] PTO ¶ 30.
[33] Trial II 410:2–11:14.
[34] PTO ¶ 32.
[35] PTO ¶ 32.

9

Partner for a combined 10% ownership interest.[36] Earlier negotiations had included an option to earn an additional 40%.[37]

On March 1, 2018, McClurg sent BC Partner 0.47102 BTC (bitcoin) from his Kraken account, and 0.15692195 BTC from another bitcoin account.[38] These transfers amounted to $9,042.60, and BC Partner acknowledged receipt the next day.[39] Thereafter, McClurg made a cash payment of $5,957.40 to BC Partner.[40] On March 27, 2018, Steinberg remitted $25,000 to BC Partner, and the firm acknowledged receipt of the funds.[41] That same day, McClurg informed Steinberg that he could not afford to pay BC Partner the remaining $10,000 of his $25,000 commitment and suggested that the pair reduce their total contribution to $40,000 for an 8% interest.[42] McClurg offered to pay Steinberg the $5,000 difference and Steinberg agreed saying, "that's . . . fine with me."[43] Thus, the pair sent a total of $40,000 to BC Partner.

---

[36] PTO ¶ 35.
[37] Trial I 53:24–54:7, 130:12–31:16.
[38] PTO ¶ 38.
[39] PTO ¶¶ 38–39.
[40] PTO ¶ 44.
[41] PTO ¶ 42.
[42] PTO ¶ 43.
[43] PTO ¶ 43 (internal quotations omitted). McClurg has not paid Steinberg the $5,000. Trial I 34:23–35:8.

*E. Formation of Praesidium*

After working together for several months as consultants, on February 26, 2018, McClurg and Steinberg formed Praesidium.[44] Upon formation, no capital was contributed, no shares were issued, and the company was simply an empty shell.[45]

The next day, February 27, 2018, a mutual friend, Steven Lehman, introduced McClurg and Liu.[46] Liu was an attorney with an interest in cryptocurrency who was working at Manatt, Phelps & Phillips, LLP.[47] In April 2018, after McClurg, Steinberg, and Liu briefly worked together at another crypto firm, the trio, joined by Dorman, sought to build Praesidium in earnest.[48] To do so, the parties needed to formalize their relationship with Praesidium and put capital into the fledgling organization. Praesidium engaged outside counsel, Stradling Yocca Carlson & Rauth P.C., to represent it and draft documents reifying these connections.[49] Among those documents was the Contribution Agreement now at issue.[50]

---

[44] PTO ¶ 33.
[45] PTO ¶ 34.
[46] PTO ¶ 37.
[47] PTO ¶ 37; Trial I 45:24–46:2.
[48] PTO ¶¶ 50–51; Trial II 422:1–23:5.
[49] *See* JTX-53 § 6.10.1; JTX-28.
[50] JTX-53 § 6.10.1; JTX-28.

11

*F. Contribution Agreement*

McClurg, Steinberg, Liu, and Dorman executed the Contribution Agreement as equity investors between May 10, 2018 and May 18, 2018, and McClurg signed on behalf of Praesidium.[51]  This agreement set the terms of the exchange between Praesidium and its intended stockholders.  Beyond stating the consideration required of each party,[52] the Contribution Agreement designates Delaware law as governing,[53] contains a merger provision,[54] and stipulates that the document was jointly drafted.[55]  Stradling Yocca Carlson & Rauth P.C. included explicit language indicating it represented only Praesidium and not any other party or faction.[56]

Section 2 of the Contribution Agreement notes that the consideration to be exchanged by the parties is listed in Schedule A.[57]  Specifically, it states, "On the terms and subject to the conditions set forth herein, at the Closing, each of the

---

[51] PTO ¶ 20.

[52] JTX-53 § 2; JTX-53 Schedule A.

[53] JTX-53 § 6.5.

[54] JTX-53 § 6.2 ("This Agreement and the other agreements and documents delivered pursuant hereto contain the sole and entire agreement and understanding of the parties with respect to the entire subject matter of this Agreement, and any and all prior discussions, negotiations, commitments and understandings, whether oral or otherwise, related to the subject matter of this Agreement are hereby merged herein.  Nothing in this Agreement, express or implied, is intended to confer upon any person other than the parties hereto any rights or remedies under or by way of this Agreement.").

[55] JTX-53 § 6.10.2 ("If an ambiguity or question of intent or interpretation arises, then this Agreement will be construed as if drafted jointly by the parties to this Agreement, and no presumption or burden of proof will arise favoring or disfavoring any party to this Agreement by virtue of the authorship of any of the provisions of this Agreement.").

[56] JTX-53 § 6.10.

[57] JTX-53 § 2.

12

Stockholders shall contribute, assign, transfer, quitclaim and deliver to the Corporation all of its right, title and interest in and to the amount of capital and/or other assets set forth opposite such Stockholder's name on Schedule A (collectively, the 'Contributed Assets')."[58]

In exchange for 220,000 shares each, McClurg and Steinberg were to contribute "(i) $22.00, (ii) all rights in and to the Cryptocurrency Indexes created by Steven Keith McClurg and Jeremy Rayne Steinberg, and (iii) all equity and other related interests in [BC Partner]."[59]   Only 100,000 of each of McClurg and Steinberg's shares were fully vested ab initio;[60] the remainder were to vest on a two year schedule beginning on November 1, 2018 subject to continued employment with Praesidium.[61]

Liu was to receive 220,000 shares in exchange for $25,022.00.[62]   100,000 of those shares were fully vested upon initial payment.[63]   120,000 of those shares were to vest subject to continued employment and a schedule beginning on November 1, 2018.[64]

---

[58] JTX 53 § 2.
[59] PTO ¶ 20; JTX-53 Schedule A.
[60] PTO ¶ 20; JTX-54.
[61] PTO ¶ 20; JTX-54.  Recall of unvested shares was designed to be accomplished through a call option exercisable upon termination of employment.
[62] PTO ¶ 20.
[63] PTO ¶ 20.
[64] PTO ¶ 20.

Dorman was to receive 120,000 shares for $12.00.[65]  All of Dorman's shares were to vest subject to continued employment at Praesidium and a two-year schedule beginning on November 1, 2018.[66]  Dorman had been offered the opportunity to invest $25,000 in exchange for 100,000 additional vested shares but he forwent the option.[67]

*G. Consideration Paid and Received*

Liu paid $25,022.00 and received 100,000 vested and 120,000 unvested shares.[68]  Dorman paid $12.00 and received 120,000 unvested shares.[69]  Praesidium issued 100,000 vested and 120,000 unvested shares to each of McClurg and Steinberg.[70]  McClurg and Steinberg each paid $22.00;[71] however, the parties now disagree whether Steinberg and McClurg ultimately contributed the rights to and in the requisite cryptocurrency indices and the "equity and other related interests in [BC Partner]."[72]  Though Liu claims he took issue with McClurg and Steinberg's

---

[65] Granted (Stipulation and [Proposed] Order Governing Post-Trial Briefing and Amendment to Stipulated Fact) § 7.
[66] *Id.*
[67] PTO ¶ 56.
[68] PTO ¶ 20.
[69] Granted (Stipulation and [Proposed] Order Governing Post-Trial Briefing and Amendment Stipulated Fact) ¶ 7, DKT No. 29.
[70] *See* JTX-53 § 3.1.
[71] PTO ¶ 20.
[72] JTX-53 Schedule A.

consideration on May 22, 2018,[73] the issue did not truly come to a head until October 18, 2018, when Liu and Steinberg "cancelled" McClurg's vested shares.[74]

### 1. Interest in BC Partner

Despite sending funds to BC Partner, neither McClurg nor Steinberg signed the February 2018 Subscription Agreement, and BC Partner did not issue Membership Certificates to either McClurg or Steinberg.[75] However, on May 4, 2018, McClurg Telegram-messaged[76] Steinberg to ask if the pair's interest in BC Partner could be assigned to Arca,[77] a wholly owned Praesidium subsidiary.[78] Steinberg unequivocally said, "yes."[79] To effectuate this proposed assignment, McClurg—with a carbon copy to Steinberg—sent an email to Sarson several hours later, which said, "For the capital that [Steinberg] and I contributed to the GP, can you issue a single subscription doc to 'Arca Investments GP, LLC' for our combined total? I will sign on behalf of Arca."[80] Sarson's response was in the affirmative: "Hey buddy, I can handle this."[81] Sarson also asked if the total investment was

---

[73] Trial I 195:11–21, 245:6–48:8.
[74] *See* PTO ¶ 63.
[75] PTO ¶¶ 46–48.
[76] For the unhip, including (before this litigation) this judge, the parties did not communicate via Western Union. "Telegram" here refers to a messaging application usable on smartphones and personal computers.
[77] JTX-47.
[78] PTO ¶ 54.
[79] JTX-47.
[80] PTO ¶ 54; JTX-48.
[81] PTO ¶ 55; JTX-49.

$40,000 or if he should expect the remaining $10,000.[82] McClurg responded, "40k perfect."[83] On May 21, 2018, Sarson emailed McClurg and Steinberg attaching the following documents: Private Placement Memorandum, Subscription Agreement, and Verification of Accredited Status (collectively, the "May 2018 Subscription Agreement").[84] A day later, May 22, 2018, McClurg forwarded the email and attachments to Liu.[85] The parties disagree as to what happened next. On the one hand, Defendants claim that Liu, "found [the May 2018 Subscription Agreement] to be materially defective"[86] and verbally told McClurg that the assignment documentation was insufficient.[87] Liu testified that McClurg responded that "he would take care of it" but never did.[88] On the other hand, McClurg testified that these conversations never occurred, Liu never informed McClurg of his misgivings, and Liu accepted responsibility for handling the remainder of the assignment.[89] Irrespective of Liu and McClurg's actions or inactions, no one executed the May 2018 Subscription Agreement.[90] Moreover, it is clear that Liu reviewed the

---

[82] PTO ¶ 55; JTX-49.
[83] PTO ¶ 55; JTX-49.
[84] PTO ¶¶ 57–58.
[85] PTO ¶ 59.
[86] Defs.' Post-Trial Br. 24.
[87] Trial I 197:1–8, 245:6–48:8.
[88] Trial I 247:3–48:8.
[89] Trial I 106:18–07:3, 81:12–83:14.
[90] PTO ¶ 60.

document, and, whatever its deficiencies, it accurately disclosed the amount of McClurg and Steinberg's investment, $40,000.[91]

### 2. Cryptocurrency Indices

McClurg placed the following indices into Praesidium's Google Drive: Arca Equal Weighted Digital Asset Index,[92] Cap Weighted Crypto Index,[93] Arca Blockchain Protocol Index,[94] Arca Large Cap Digital Asset Index,[95] and Arca Mid Cap Digital Asset Index (collectively, the "Cryptocurrency Indices").[96] Aside from the Contribution Agreement, McClurg and Steinberg did not draft or execute a separate assignment document for the indices.[97]

*H. Running Praesidium*

At first, Praesidium ran smoothly,[98] but things changed around August 2018 when McClurg and Steinberg started to disagree.[99] One percolating point of disagreement was who would take the helm of Praesidium as its CEO; both

---

[91] JTX-59.
[92] JTX-3; JTX-128; Trial I 71:20–72:13.
[93] JTX-134; Trial I 72:14–73:6.
[94] JTX-135; Trial I 74:18–75:4.
[95] JTX-136; Trial I 75:6–75:15.
[96] JTX-137; Trial I 75:16–76:3.
[97] *See* Trial I 121:14–22:15.
[98] Trial I 97:21–98:12.
[99] *See* Trial I 98:17–101:10.

McClurg and Steinberg wanted the position.[100] Ultimately, Steinberg prevailed and assumed the mantle of CEO.[101]

*I. Termination of Employment, Ousting as Director, and Cancellation of the Shares*

On October 3, 2018, Steinberg called a Praesidium board meeting.[102] At that meeting, Liu and Steinberg voted to terminate McClurg's employment as a Praesidium employee and its Chief Investment Officer.[103] With the assistance of outside counsel, Liu and Steinberg removed McClurg as a director on October 8, 2018 by written consent of the majority of shareholders.[104]

In addition to firing McClurg at the October 3 board meeting, Praesidium offered $50,000 to repurchase "all of [McClurg's] outstanding vested and unvested shares."[105] McClurg said "he would take some time to consider the offer."[106] Within a week, Liu reached out and suggested that McClurg should counter the $50,000 offer if he wanted.[107]

---

[100] Trial I 101:11–03:2; Trial I 211:21–12:17.
[101] *See* Trial I 211:21–12:17; PTO § 18.
[102] JTX-71.
[103] JTX-71.
[104] Trial I 262:2–14; JTX-74.
[105] JTX-71; Trial I 111:21–112:1.
[106] JTX-71.
[107] JTX-75.

Outside of the negotiations with McClurg, Liu and Steinberg were busy looking into Arca's interest in BC Partner. According to the Defendants, following the October 3, 2018 board meeting, "Liu and Steinberg scoured the Company's email for a signed subscription agreement or an assignment."[108] Liu testified that he was surprised that "there was any issue with their initial subscription into [BC Partner]".[109] After they were unable to find a signed subscription agreement, Liu and Steinberg consulted with outside counsel to determine their obligations as directors.[110] On October 8, 2018, Liu reached out to Sarson to request the return to Arca of not only Steinberg's investment in BC Partner, but also *McClurg's* investment as well.[111]

> In addition to [Steinberg], I understand that Steven McClurg also has a contribution to your GP. *That was assigned to Arca,* as Steven has previously communicated to you I understand. We would like to get that refunded to Arca as well. Please let me know if you need additional documentation on that however, I have an email from you back in May that was a forward from Steven.[112]

In a follow-up email on October 10, 2018, Liu asked Sarson how much McClurg invested in BC Partner.[113] Sarson's response came on October 17, 2018 and noted

---

[108] Defs.' Post-Trial Br. 38; Trial I 264:4–65:14.
[109] Trial I 264:13–23.
[110] Trial I 264:24–65:22.
[111] JTX-73.
[112] JTX-73 (emphasis added).
[113] JTX-77.

that McClurg remitted a total of $15,000 to BC Partner but that the total investment was $40,000.[114]

Despite continued negotiations with Liu on October 14 through October 16,[115] Praesidium, via Steinberg and Liu in their capacity as directors, purported to cancel McClurg's 100,000 vested shares on October 18, 2018.[116] The unanimous board consent cancelled not only McClurg's 100,000 vested shares but also Steinberg's 100,000 vested shares.[117] Steinberg retained his unvested shares.[118]

Several months later, in December 2018, Sarson reached out to Steinberg and Liu asking "where would you like me to send information on Arca's investment in [BC Partner]" and requesting the execution of freshly attached subscription documentation.[119] In later emails, Liu sought the documents showing Arca's interest in BC Partner and questioned the lack of a signed agreement.[120] In response, Sarson noted the request to list Arca as BC Partner's investor, BC Partner's effectuation of that request, the fact that BC Partner was not involved in "the conflict between [Steinberg] [McClurg] and Arca," and the assistance BC Partner provided to Arca

---

[114] JTX-77.
[115] JTX-76.
[116] PTO ¶ 63; JTX-80.
[117] PTO ¶ 63; JTX-80.
[118] Trial II 472:12–18. It is unclear whether Praesidium ever exercised its option to repurchase McClurg's unvested shares, which, in any event, are not at issue here.
[119] JTX-85.
[120] JTX-85.

in setting up shop.[121] Liu responded, "As far as I'm concerned, there never existed any subscription by Arca and I'm unwilling now to complete this subscription."[122] He also noted deficiencies in the documentation and took issue with the amount of the investment stating, "what was represented to me was a subscription already done of $25,000 each by [Steinberg] and [McClurg]. That totals $50,000, not $40,000."[123]

## II. ANALYSIS

Plaintiff's two counts operate on similar but distinct frequencies. Count 1 sounds in contract, while Count 2 alleges breach of the directorial duty of loyalty. In Count 1, McClurg asserts that despite his provision of valid consideration and execution of the Contribution Agreement, the Defendants unlawfully caused the company to revoke his stock and thus breached the contract. In Count 2, McClurg alleges that the Director Defendants' decision to cancel McClurg's shares breached the duty of loyalty they owed to him as a stockholder. The Plaintiff seeks a constructive trust in his favor over the stock, or damages. The questions pertinent to this relief are whether Praesidium validly issued McClurg's shares pursuant to the

---

[121] JTX-85.
[122] JTX-85.
[123] JTX-85.

Contribution Agreement, and whether Praesidium's cancellation of the shares was valid and effective.

## A. The Issue of Issuance

The question of whether Praesidium validly issued McClurg's shares hinges on whether he complied with the Contribution Agreement. That agreement required McClurg (and Steinberg) to contribute certain assets to the company; McClurg maintains that he did; the Defendants contend that he did not perform, or that his performance was inadequate and illusory.

### 1. McClurg Gave Valid Consideration

The Defendants claim that "Praesidium did not receive any bargained-for consideration from McClurg."[124] The parties to this action each executed the Contribution Agreement and in exchange for 220,000 shares McClurg was to provide "(i) $22.00, (ii) all rights in and to the Cryptocurrency Indexes created by Steven Keith McClurg and Jeremy Rayne Steinberg, and (iii) all equity and other related interests in [BC Partner]."[125] There is no question that McClurg remitted $22.00 to Praesidium.[126] However, the Defendants contest whether McClurg

---

[124] Defs.' Post-Trial Br. 41.
[125] PTO ¶ 20.
[126] PTO ¶ 20.

22

provided the requisite rights in the cryptocurrency indices as well as the equity and other related interests in BC Partner.

### a. McClurg Assigned His Interests in the Cryptocurrency Indices

McClurg, as discussed above, uploaded all of the cryptocurrency indices that he created onto Praesidium's Google Drive.[127] He also signed the Contribution Agreement, which listed "all rights in and to the Cryptocurrency Indexes created by Steven Keith McClurg and Jeremy Rayne Steinberg" as his contributed assets.[128] McClurg intended to effectuate the requirements of the Contribution Agreement through the upload and claimed no interest in the cryptocurrency indices after signing the Contribution Agreement.

The Defendants argue 1) that the indices were not tendered, 2) that the indices were worthless, 3) that the indices were not indices, and 4) that Praesidium did not publicly acknowledge ownership.[129]

The first of the Defendants' arguments fails because although the method of transfer may not have been optimal, McClurg's actions and intent caused the transfer of the Cryptocurrency Indices to Praesidium. The Contribution Agreement required that each party "execute such assignments or other documents as necessary or

---

[127] *See supra* notes 92–96 and accompanying text.
[128] JTX-53 Schedule A.
[129] Defs.' Post-Trial Br. 44.

reasonably requested by the Corporation to effect the transfer"[130] and deliver "such further certificates, consents and other documents as may be necessary."[131] The corporation could have requested further documentation but chose not to. From the mid-May 2018 execution of the Contribution Agreement until, at least, the October 18, 2018 cancellation of the shares, Praesidium took no issue with the indices.[132] I find that McClurg tendered the Cryptocurrency Indices.

The Defendants' second and third arguments are unavailing. The products that McClurg and Steinberg provided were undoubtedly the "Cryptocurrency Indexes" they had created; the contract required them to be assigned to Praesidium, they did so, and thus complied with the bargained for duty.

The Defendants' fourth argument is made irrelevant by the outcome of arguments one through three. Although public acknowledgement would be evidence of acceptance and ownership, I have already found that McClurg and Steinberg assigned the Cryptocurrency Indices.[133]

---

[130] JTX-53 § 4.2.2.
[131] JTX-53 § 4.3.
[132] There is no indication that Praesidium took issue with the indices at any time prior to this litigation.
[133] The Plaintiff sought to introduce marketing decks to help prove this point. The Defendants objected for lack of proper foundation. As the point of argument that the marketing decks relate to is moot, I need not rule on their admissibility.

24

### b. McClurg Assigned His Interest in BC Partner

Although through somewhat circuitous means, Praesidium received all of McClurg's interest in BC Partner. As discussed above, Steinberg, McClurg, and Sarson came to an understanding that the total investment by Steinberg and McClurg in BC Partner was $40,000, resulting in an 8% interest. Steinberg and McClurg independently negotiated to equalize their respective shares of the investment.[134] As such, each contributed $20,000 to BC Partner.[135] These actions created Steinberg and McClurg's interest in BC Partner. McClurg, with Steinberg's knowledge and consent,[136] requested that Sarson transfer their interest in BC Partner to Praesidium's subsidiary Arca.[137] Sarson acknowledged this request and sent McClurg documents to effectuate it.[138] Sarson has acknowledged the purchase of equity by McClurg and Steinberg, and the directive to transfer the interest to Arca.[139] Sarson's documentation served to monumentalize rather than create Praesidium's interest in BC Partner, an equitable interest created at the time of the investment. After

---

[134] PTO ¶ 43.

[135] Whether McClurg owes Steinberg $5,000 was not a question addressed by the parties, and I need not address it here.

[136] JTX-47.

[137] JTX-48.

[138] PTO ¶¶ 57–58.

[139] Trial II 291:9–293:23, 297:2–20.

25

McClurg requested the assignment, BC Partner treated Praesidium as an equity holder.[140]

Moreover, at the time of the cancellation, the Director Defendants were aware of McClurg's actual equity investment in BC Partner. Steinberg, of course, had personally made a $25,000 investment,[141] and understood that McClurg had put in $15,000 with the promise to true up that investment by paying Steinberg $5,000.[142] Steinberg thus knew that $40,000 was the sum total of the equity investment in BC Partner. I find that this investment was made to acquire equity in the business; there is no evidence that the payment was a loan to BC Partner or had some other purpose.

Liu, too, was aware of the equity investment in BC Partner, as evidenced by his communication to Sarson contemporary with McClurg's firing and the "cancellation" of his shares. Liu referred to the investment in BC Partner as made by McClurg and "assigned to Arca."[143] He further requested Sarson return the funds to Arca.[144] Further, despite Sarson providing documentation after McClurg's termination and offering to provide additional documentation if necessary,[145] Liu

[140] This included working with Praesidium by sharing internal operational flow charts, sharing BC Partner's Rolodex, connecting Praesidium with service providers, training a Praesidium trader, and provisioning that trader with BC Partner's trading platforms and security apparatuses. Trial II 302:11–304:4.
[141] PTO ¶ 42.
[142] PTO ¶ 43.
[143] JTX-73.
[144] JTX-73.
[145] JTX-85.

evinced no interest in documenting Praesidium's interest—the Director Defendants were more interested in a tool to defenestrate McClurg.[146]

The Defendants argue 1) that the method of assignment was improper, 2) that McClurg did not have "good and marketable title" to any equity interest in BC Partner and the May 2018 Subscription is not good evidence of such an interest, and 3) that even if McClurg and Steinberg provided an equity interest, that equity interest was the wrong kind of equity interest.

The Defendants' first argument does not comport with the Contribution Agreement. As McClurg rightfully noted, the Contribution Agreement was silent as to the method by which assets were to be contributed. Rather, the Contribution Agreement states that "Stockholders shall contribute, assign, transfer, quitclaim, and deliver to the Corporation all of its right, title and interest in and to the amount of capital and/or other assets set forth . . . on Schedule A."[147] McClurg, through his email to Sarson and Sarson's affirmative response, assigned his interest in BC Partner to Praesidium. Praesidium, per the Contribution Agreement, had a right to request further documentation from McClurg or Sarson. They did not do so.[148] In actuality, the facts indicate that following McClurg's ouster, Liu and Steinberg were

---

[146] BC Partner listed Arca as an investor as late as January 2019, JTX-90, but it ultimately returned $10,957 to Steinberg as the value of "his" $25,000 investment, JTX-91.

[147] JTX-53 § 2.

[148] Presumably, Praesidium still has the right to obtain documentation to perfect its interest.

27

uninterested in documenting Praesidium's equity interest in BC Partner.[149]  Instead, they wished to emphasize the technical shortcomings of the documentation to validate cancelation of McClurg's stock.

The Defendants' second argument fails because McClurg held an interest in BC Partner upon Sarson's acknowledgment of receipt of funds.  The Defendants have failed to demonstrate otherwise, and, again, have eschewed Sarson's assistance to confirm Praesidium's equity interest.[150]

The Defendants third argument fails because the Contribution Agreement did not specify the type of equity interest required.  In briefing, the Director Defendants deny that the interest of Steinberg and McClurg in BC Partner was the "right kind" of equity—that is, it was not membership units represented by certification.  But that is not the consideration Praesidium required of McClurg.  The Contribution Agreement simply required McClurg to contribute "all equity and other related interests in [BC Partner]."[151]  He provided such interests, which were real, not illusory.

---

[149] JTX-85.
[150] JTX-85.
[151] JTX-53 Schedule A.

2. <u>The Defendants' Affirmative Defense of Misrepresentation Fails</u>

The Defendants attempt to escape any obligation to McClurg by asserting that he materially or fraudulently misrepresented his interest in BC Partner, resulting in McClurg's interest, presumably, being voidable. They take issue with McClurg's representations as to the value of his investment in BC Partner. They have failed to demonstrate any misrepresentation to Praesidium.

To avoid a contractual obligation due to misrepresentation, a party must show by a preponderance of the evidence "A) that there was a misrepresentation B) that the misrepresentation was either fraudulent or material, C) that the misrepresentation induced the recipient to enter into the contract, and D) that the recipient's reliance on the misrepresentation was reasonable."[152] The parties acquiring stock in the corporation were McClurg, Steinberg, Liu and Dorman; the counterparty was Praesidium.

The Defendants claim that "McClurg repeatedly misrepresented to Liu that he and Steinberg had recently paid $25,000 each for an equity interest in [BC Partner]."[153] They support this proposition with a single piece of documentary evidence, an April 8, 2018 Telegram message from McClurg to Liu stating,

---

[152] *Martin v. Med-Dev Corp.*, 2015 WL 6472597, at *12 (Del. Ch. Oct. 27, 2015) (quoting *Alabi v. DHL Airways, Inc.*, 583 A.2d 1358, 1361–62 (Del. Super. Ct. 1990)).
[153] Defs.' Post-Trial Br. 56.

29

"[Momentum] is run by John Sarson. Rayne and I own 8% of [BC Partner] with $50k paid in, option to earn 40% if we raise captital [sic]. Want us to throw our share into company?"[154]

In fact, that representation was correct as to the ownership interest—8%—but misstated the investment, which was in actuality $40,000, not $50,000. The "option" to earn a larger equity interest was indeed discussed between McClurg and Sarson, but I assume for purposes of this opinion that the option had lapsed as of the time of the communication between McClurg and Liu. These misstatements, I find, cannot have mislead the counterparty, Praesidium.

The two principals of Praesidium at the time the Contribution Agreement was entered were McClurg and Steinberg. Obviously, McClurg was aware of the extent of his investment with Steinberg at the time of the agreement. I find, based on the evidence at trial, that Steinberg was fully aware that the contribution was $40,000; that he and McClurg owned 8% of the equity in BC Partner as a result; and that McClurg promised to repay him $5,000 personally, outside the Contribution Agreement. Steinberg knew the extent of the interest he and McClurg were contributing to the company. If there was a party mislead by the misrepresentation, it was Liu in his capacity as an individual investor. He asserts that he was induced

---

[154] JTX-38.

30

to invest $25,000 in Praesidium on the misrepresentation that McClurg and Steinberg held $50,000 in BC Partner equity, which they stated they would contribute, along with the cryptocurrency indices, to the company.[155]  Whatever rights this gives Liu personally, he has not asserted them here.  But there is no basis for Praesidium to void the Contribution Agreement.[156]

## B. The Issue of Cancellation

I have found that Praesidium validly issued McClurg's shares for consideration that was both non-illusory and contractually compliant.  There is, accordingly, no justification for the cancellation of McClurg's shares.  The Director Defendants, moreover, have submitted no evidence that the purported cancelation

---

[155] Liu testified that McClurg told him repeatedly that the parties were making "equal" investments.  But the Contribution agreement makes clear that Liu was contributing cash, and McClurg and Steinberg were contributing equity in BC Partner and the Cryptocurrency Indices.  If, in fact, this equity had represented a recent contribution of $50,000, not $40,000—as Liu has testified he believed—this would make Liu's contributions *less* than those of McClurg and Steinberg.

[156] It is unclear how the Defendants expect their defense, if realized, to operate.  If the Contribution Agreement were voided, the result would presumably be much more fundamental than McClurg losing his equity in the company.

was compliant with the DGCL.[157]  They maintain only that they attempted to cancel McClurg and Steinberg's shares by "Unanimous Board Consent."[158]

Praesidium did not bring an action against McClurg asking the Court to cancel McClurg's stock or find the issuance void.  Liu and Steinberg wanted McClurg removed from Praesidium and resorted to self-help.  The attempted cancelation, in light of McClurg's payment of consideration, was not effective.

*C. The Remedy*

Because I have found the action to cancel the stock was ineffective, one remedy sought by McClurg—imposition of a trust in his favor over the shares—is appropriate.[159]  Because my decision here seems to provide McClurg with full relief, it is appropriate to seek the opinion of the parties as to whether other outstanding issues need to be addressed, including the contractual claim against Praesidium[160]

---

[157] To the extent that the purported cancellation changed the capital structure of Praesidium, presumably actions comporting with *8 Del. C.* 242(a) were required to effect a cancellation.  *See Reddy v. MBKS Co., Ltd.*, 945 A.2d 1080, 1086–88 (Del. 2008) (requiring charter amendment to effect cancellation of stock).  The Plaintiff, I note, has not argued that the cancellation was ineffective on statutory grounds (basing his argument instead on contract and fiduciary duty breaches) and I make no such finding here.

[158] PTO ¶ 63.

[159] In post-trial briefing, McClurg seeks damages, not his stock.  To the extent after review of this decision, the parties require further instruction as to the proper remedy, they should so inform me.

[160] To the extent McClurg asserts contractual claims against the other stockholders for breach of the Subscription Agreement, those claims must fail, as the other stockholders are not counterparties and have no obligation to McClurg under that agreement.

32

and the breach of duty claim against the Director Defendants.  I will defer a final order pending submissions of the parties to that effect.

## III. CONCLUSION

The attempt by the Director Defendants to cancel the vested stock held by McClurg in Praesidium was not effective.  Accordingly, a constructive trust attaches to the stock in favor of McClurg.  Further consideration awaits consultation with counsel, as provided above.